# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# NEW HAVEN DIVISION

| | |
|---|---|
| In re:<br><br>AFFINITY HEALTHCARE MANAGEMENT, INC., ET AL[1]<br><br>Debtors. | Chapter 11<br><br>Case Nos. 16-30043 through 16-30047<br>Jointly Administered<br><br>January 15, 2016 |

## APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT OF PULLMAN & COMLEY, LLC AS COUNSEL FOR THE DEBTORS

Affinity Healthcare Management, Inc. ("Affinity"), Healthcare Investors, Inc. d/b/a Alexandria Manor ("Alexandria"), Healthcare Alliance, Inc. d/b/a Blair Manor ("Blair"), Healthcare Assurance, LLC d/b/a Douglas Manor ("Douglas"), Healthcare Reliance, LLC d/b/a Ellis Manor ("Ellis") (collectively, the "Debtors"), as Debtors and Debtors-in-Possession, hereby seek an Order of this Court pursuant to section 327(a) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure and D.Conn. LBR 2014-1, authorizing it to employ Pullman & Comley, LLC ("P&C") as its Connecticut counsel for the Debtor, and respectfully represents:

### BACKGROUND

1. On January 13, 2016, (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under the Bankruptcy Code.

2. No Committee of unsecured creditors has been appointed in this case.

---

[1] Affinity Healthcare Management, Inc., Case No. 16-30043; Health Care Investors, Inc., Case No. 16-30044; Health Care Alliance, Inc., Case No. 16-30045; Health Care Assurance, LLC, Case No. 16-30046; and Health Care Reliance, LLC, Case No. 16-30047.

3. Affinity is a nursing home management company that is located at 1781 Highland Avenue, Suite 206, Cheshire, Connecticut 06410.

4. Alex is a Connecticut corporation that is engaged in the business of operating a skilled 120 bed nursing home. The facility is located at 55 Tunxis Ave. in Bloomfield, Connecticut.

5. Blair is a Connecticut corporation that is engaged in the business of operating a skilled 98 bed nursing home. The facility is located at 612 Hazard Ave, Enfield, Connecticut.

6. Douglas is a Connecticut limited liability company that is engaged in the business of operating a skilled 90 bed nursing home. The facility is located at 103 N Rd in Windham, Connecticut.

7. Ellis is a Connecticut corporation that is engaged in the business of operating a 105 skilled bed nursing home. The facility is located at 210 George St. in Hartford, Connecticut.

8. Collectively, there are 413 beds in the Debtors' Facilities and the debtors have approximately 550 full and part-time employees. Approximately 250 of the Debtors' employees belong to the New England Healthcare Employees Union District 1199. The Debtors' Monthly Payroll is approximately $1,500,000 ($1,469,600 for their employees and $30,400 for their officers).

9. The Debtors' Books and records indicated that as of the Petition Date, the Debtors have Assets totaling $7,830,000 and Liabilities totaling $21,850,000.

10. The Debtors previously filed for relief under Chapter 11 of the Bankruptcy Code on October 14, 2008, and after close to two years of operating in Chapter 11, the Debtors confirmed a Joint Chapter 11 Plan of Reorganization and emerged from Bankruptcy on August 13, 2010.

11. Unfortunately, since emerging from its first Chapter 11proceeding, the Debtors have continued to encounter financial obstacles and once again have no choice but to file Chapter 11 in order to stabilize operations.

12. One of the reasons giving rise to the Debtors' cash flow problems arise from the fact that the only funding available to enable the Debtors to exit their last Chapter 11 Proceeding was substantially more expensive than anticipated and costs and fees charged by the Factor who provided the exit funding resulted in a substantial drain of cash from the Debtors.

13. In May of 2012, the Debtors found a new funding source and on May 25, 2013 entered into a Purchase Agreement, Security Agreement and other Funding Documents with Revenue Managements Solutions, LLC (RMS), wherein RMS provides funding in an amount not to exceed $2,500,000 through the purchase and acquisition of all right, title and interest of certain of the Debtors' healthcare accounts receivables. To further secure the obligations of the Debtors to RMS, the Debtors granted to RMS a continuing security interest in and liens upon their respective right, title and interest in all of the properties, assets and rights of the Debtors, wherever located, whether now owner or thereafter acquired or arising, and all proceeds and products thereof.

14. Further, since emerging from Chapter 11 in August of 2010, the Debtors have received no increase its Medicaid rate from the State of Connecticut Department of Social Services (DSS).

15. Moreover, since 2013, DSS has not even paid the Debtors the rates set in the Rate Letters issued by DSS to the Debtors. As a result the Debtors have been shorted on their Medicaid Rate over the past three years in excess of $3,600,000.

16. Further, claims submitted by the Debtors to the DSS for reimbursement of services provided by the Debtors to Medicaid patients were not only not processed in a timely basis, taking in most instances in excess of 13 months to process, DSS failed to follow their own procedures and improperly denied a total of $2.4 million of claims. DSS has agreed to another review of the claims and the claims have been resubmitted.

17. As a result, the Debtors fell behind in the payment of expenses, including the payment of Provider Taxes. The Debtors currently owe DRS approximately $6 million, $1.5 million of which constitutes penalties, charges and other service fees[2].

18. On or about December 9, 2015, DRS issued warrants to the Debtors in the approximate amount of $1,297,944.

19. As a result of the tax warrants, DSS notified the Debtors that DSS intends to recoup total of $432,648.00 on a monthly basis. On January 13, 2016 recouped such amount. If DSS continues to recoup such amounts on a monthly basis then the Debtors will not be able to continue to operate.

20. Also, like most of the other nursing homes in Connecticut, the Debtors are experiencing record low bed rates which is impacting the revenue stream.

21. The Debtors are currently unable to pay their debts as they come due for all of the reasons set forth above.

22. The Debtors have commenced these Chapter 11 cases to restructure their operations and to ensure their long-term viability through a plan of reorganization, subject to the approval of the Court.

---

[2] One must question why DRS allowed the amount to accumulate over three years before issuing the warrants.

4

**RELIEF REQUESTED**

23. The Debtors seek to employ P&C as their counsel in these Chapter 11 cases.

24. P&C is a full service firm with expertise in litigation in Connecticut State and Federal Court, including Bankruptcy Court, healthcare regulatory matters, Connecticut corporate matters, healthcare insolvency, and receivership proceedings. P&C has dedicated professional who provide these services to Debtors' creditors and holders of equity interest.

25. In connection with Debtors' operations, there are numerous issues that require the attention of counsel with expertise in Connecticut litigation, bankruptcy, healthcare regulatory matters, Connecticut corporate matters, healthcare insolvency and receiverships. For that reason, the Debtors have asked P&C to represent them as their counsel.

26. Based on the foregoing, the Debtors believe that P&C is both uniquely and well qualified to represent them in this case, and the retention of P&C is in the best interests of the Estate Creditors and other parties-in-interest.

27. The Debtors hereby seek Court approval to retain P&C pursuant to section 327(a) of the Bankruptcy Code as its counsel in these Chapter 11 proceedings.

28. The services of P&C are necessary to enable the Debtors to perform faithfully its duties as debtor and debtor-in-possession.

29. The Debtors propose to compensate P&C based upon its normal hourly rates, as adjusted annually. P&C's current effective standard hourly billing rates range from $215.00 to $525.00 per hour for attorneys and from $180.00 to $275.00 per hour for paralegals. The hourly rates for the principal attorneys in this case are $495.00 per hour for Elizabeth J. Austin, $495.00 per hour for Irve Goldman, and $375.00 per hour for Jessica Grossarth.

30. The services of P&C are necessary to enable the Debtors to perform faithfully its duties as debtors and debtors-in-possession. Subject to further order of this Court, it is

5

anticipated that P&C, in addition to the services described above, will, to the extent necessary, provide services in the following areas:

    (a)    advising the Debtors with respect to its rights and obligations as debtor-in-possession and with respect to other areas of bankruptcy law;

    (b)    preparing on behalf of the Debtors necessary petitions, schedules, applications, motions and other papers in connection with the administration of the Debtors' estate;

    (c)    taking all necessary actions to protect and preserve the estate of the Debtors, including, if required by the facts and circumstances, the prosecution of actions and adversary or other proceedings on the Debtors' behalf, the defense of any actions and adversary or other proceedings commenced against the Debtors, negotiations concerning all litigation in which the Debtors are involved, and where appropriate, the filing and prosecution of objections to claims filed against the Debtor's estate;

    (d)    representing the Debtors at all hearings and proceedings herein;

    (e)    developing, negotiating and confirming a Chapter 11 plan for the Debtors and preparing a disclosure statement in respect thereof; and

    (f)    performing other legal services required by the Debtors in connection with this Chapter 11 case.

31.    It is necessary that the Debtors employ an attorney to render the foregoing professional services. P&C has stated its desire and willingness to act in this case and render the necessary professional services as counsel for the Debtors.

32.    P&C was paid the sum of $175,000 prior to the filing of this case as and for a retainer for services rendered and to be rendered in connection with this case and expenses

6

incurred in connection therewith.[3] The source of this retainer was funds of the Debtors. The Debtors desire to employ P&C under a general retainer because of the diverse legal services that are likely to be required. Subject to the approval of the Court, the Debtors have agreed to compensate P&C at its usual hourly rates and to reimburse the firm for its actual expenses, charges and disbursements.

33. The attorneys and other professionals of P&C who, it is expected, will be providing services to the Debtors, and their respective hourly rates are:

| Elizabeth J. Austin | $495.00/hr |
| Irve J. Goldman | $495.00/hr |
| Jessica Grossarth, Esq. | $375.00/hr. |

Other attorneys and paralegals may be used as necessary, and the hourly rates set forth above are periodically adjusted by P&C in the ordinary course of its business.

34. As set forth in the affidavit of Elizabeth J. Austin filed contemporaneously herewith, to the best of the Debtors' knowledge, P&C represents no interest adverse to the Debtors' Estate regarding the matters upon which it is to be engaged, and is a disinterested person as defined in section 101(14) of the Bankruptcy Code. Upon information and belief, to the best of Debtors' knowledge, P&C does not have any other connection with the Debtors, their creditors, members or other parties-in-interest, their respective attorneys or accountants, the United States Trustee or any person employed in the Office of the United States Trustee, except as set forth herein.

35. P&C requests that the Application be approved nunc pro tunc to the filing date, January 13, 2016.

---

[3] P&C performed services for the Debtors pre-petition in an effort to work out its issues and prepare the bankruptcy filing. Those services were paid for with the retainer leaving a balance of $152,000 entering this case.

**WHEREFORE**, the Debtors request that the Court enter an order authorizing it to employ P&C as counsel to represent the Debtors in these Chapter 11 cases and granting such other or further relief as the Court deems just and proper.

Dated at Bridgeport, Connecticut this 15th day of January, 2016.

AFFINITY HEALTHCARE MANAGEMENT, INC., ET AL

By: /s/ Benjamin Z. Fischman
    Benjamin Z. Fischman

Respectfully submitted,
Pullman & Comley, LLC
Proposed Counsel to the Debtors
AFFINITY HEALTHCARE MANAGEMENT, INC., ET AL

By: /s/ Elizabeth J. Austin
    Elizabeth J, Austin (ct04383)
    Jessica Grossarth (ct23975)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT  06601-7006
    (203) 330-2000  Fax:  (203) 576-8888
    eaustin@pullcom.com
    jgrossarth@pullcom.com