**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>AFFINITY HEALTHCARE MANAGEMENT, INC., ET AL[1]<br><br>Debtors. | Chapter 11 (JAM)<br><br>Case Nos. 16-30043 through 16-30047<br>Jointly Administered |

**MOTION FOR ORDER FINDING OMBUDSMAN IS UNNECESSARY FOR**
**AFFINITY HEALTHCARE MANAGEMENT, INC.**

Affinity Healthcare Management, Inc. ("Affinity"), Health Care Investors, Inc. d/b/a Alexandria Manor ("Alex"), Health Care Alliance, Inc. d/b/a Blair Manor ("Blair"), Health Care Assurance, LLC d/b/a Douglas Manor ("Douglas"), and Health Care Reliance, LLC d/b/a Ellis Manor ("Ellis") (the "Debtors"), by and through their undersigned proposed attorneys, Pullman & Comley, LLC, hereby submit their Motion for Order Finding Ombudsman is Unnecessary for Affinity (the "Motion") and, in support thereof, respectfully represents as follows:

**RELEVANT BACKGROUND**

1. On January 13, 2016, (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under the Bankruptcy Code. By order dated January 15, 2016, the Debtors cases are being jointly consolidated.

2. No Committee of unsecured creditors has been appointed in this case.

---

[1] Affinity Healthcare Management, Inc., Case No. 16-30043; Health Care Investors, Inc., Case No. 16-30044; Health Care Alliance, Inc., Case No. 16-30045; Health Care Assurance, LLC, Case No. 16-30046; and Health Care Reliance, LLC, Case No. 16-30047.

3. Affinity is a nursing home management company that is located at 1781 Highland Avenue, Suite 206, Cheshire, Connecticut 06410.

4. Alex is a Connecticut corporation that is engaged in the business of operating a skilled 120 bed nursing home. The facility is located at 55 Tunxis Ave. in Bloomfield, Connecticut.

5. Blair is a Connecticut corporation that is engaged in the business of operating a skilled 98 bed nursing home. The facility is located at 612 Hazard Ave, Enfield, Connecticut.

6. Douglas is a Connecticut limited liability company that is engaged in the business of operating a skilled 90 bed nursing home. The facility is located at 103 N Rd in Windham, Connecticut.

7. Ellis is a Connecticut corporation that is engaged in the business of operating a 105 skilled bed nursing home. The facility is located at 210 George St. in Hartford, Connecticut.

8. Collectively, there are 413 beds in the Debtors' Facilities and the debtors have approximately 550 full and part-time employees. Approximately 250 of the Debtors' employees belong to the New England Healthcare Employees Union District 1199. The Debtors' Monthly Payroll is approximately $1,500,000 ($1469,600 for their employees and $30,400 for their officers).

9. The Debtors' Books and records indicated that as of the Petition Date, the Debtors have Assets totaling $7,830,000, and Liabilities totaling $21,850,000.

10. The Debtors previously filed for relief under Chapter 11 of the Bankruptcy Code on October 14, 2008, and after close to two years of operating in Chapter 11, the Debtors confirmed a Joint Chapter 11 Plan of Reorganization and emerged from Bankruptcy on August 13, 2010.

11. Unfortunately, since emerging from its first Chapter 11proceeding, the Debtors have continued to encounter financial obstacles and once again have no choice but to file Chapter 11 in order to stabilize operations.

12. One of the reasons giving rise to the Debtors' cash flow problems arise from the fact that the only funding available to enable the Debtors to exit their last Chapter 11 Proceeding was substantially more expensive than anticipated and costs and fees charged by the Factor who provided the exit funding resulted in a substantial drain of cash from the Debtors.

13. In May of 2012, the Debtors found a new funding source and on May 25, 2013 entered into a Purchase Agreement, Security Agreement and other Funding Documents with Revenue Managements Solutions, LLC (RMS), wherein RMS provides funding in an amount not to exceed $2,500,000 through the purchase and acquisition of all right, title and interest of certain of the Debtors' healthcare accounts receivables. To further secure the obligations of the Debtors to RMS, the Debtors granted to RMS a continuing security interest in and liens upon their respective right, title and interest in all of the properties, assets and rights of the Debtors, wherever located, whether now owner or thereafter acquired or arising, and all proceeds and products thereof.

14. Further, since emerging from Chapter 11 in August of 2010, the Debtors have received no increase its Medicaid rate from the State of Connecticut Department of Social Services (DSS).

15. Moreover, since 2013, DSS has not even paid the Debtors the rates set in the Rate Letters issued by DSS to the Debtors. As a result the Debtors have been shorted on their Medicaid Rate over the past three years in excess of $3,600,000.

16. Further, claims submitted by the Debtors to the DSS for reimbursement of services provided by the Debtors to Medicaid patients were not only not processed in a timely basis, taking in most instances in excess of 13 months to process, DSS failed to follow their own procedures and improperly denied a total of $2.4 million of claims. DSS has agreed to another review of the claims and the claims have been resubmitted.

17. As a result, the Debtors fell behind in the payment of expenses, including the payment of Provider Taxes. The Debtors currently owe DRS approximately $6 million, $1.5 million of which constitutes penalties, charges and other service fees[2].

18. On or about December 9, 2015, DRS issued warrants to the Debtors in the approximate amount of $1,297,944.

19. As a result of the tax warrants, DSS notified the Debtors that DSS intends to recoup total of $432,648.00 on a monthly basis. On January 13, 2016 recouped such amount. If DSS continues to recoup such amounts on a monthly basis then the Debtors will not be able to continue to operate.

20. Also, like most of the other nursing homes in Connecticut, the Debtors are experiencing record low bed rates which is impacting the revenue stream.

21. The Debtors are currently unable to pay their debts as they come due for all of the reasons set forth above.

22. The Debtors have commenced these Chapter 11 cases to restructure their operations and to ensure their long-term viability through a plan of reorganization, subject to the approval of the Court.

---

[2] One must question why DRS allowed the amount to accumulate over three years before issuing the warrants.

4

**RELIEF REQUESTED**

23.   Bankruptcy Code Section 333(a)(1) provides for the appointment of a patient care ombudsman for a health care business. It states:

> If the debtor in a case under chapter . . . 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business *unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case*.

(Emphasis added).

24.   Bankruptcy Code Section 101(27)(A) defines a "health care business" as "any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public and services for . . . (I) a skilled nursing facility…(III) assisted living facility…(IV) home for the aged…and…(V) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV) or (V)." 11 U.S.C. §101(27)(B)(ii)(I)(III)(IV) and (V).

25.   Bankruptcy Rule 2007.2 essentially mirrors Bankruptcy Code Section 333 and provides:

> In a chapter 7, chapter 9, or chapter 11 case in which the debtor is a health care business, the court shall order the appointment of a patient care ombudsman under [section] 333 of the Code, unless the court, on motion of the United States trustee or a party in interest filed no later than 21 days after the commencement of the case . . . finds that the appointment of a patient care ombudsman is not necessary under the specific circumstances of the case for the protection of patients.

26.   As a management company for four skilled nursing homes, Affinity may well be viewed to be a "health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV) or (V) . . . ." 11 U.S.C. § 101(27)(A) and (B)(ii)(VI). In fact, Affinity, in its voluntary

5

Chapter 11 petition, indicated that it is a health care business. Insofar as this is the case, and absent an appropriate motion to the contrary, the appointment of a patient care ombudsman for Affinity would be mandatory. See 11 U.S.C. § 333(a)(1).

27. By this Motion, the Debtors request, pursuant to Bankruptcy Code Sections 333(a)(1) and Bankruptcy Rule 2007.2(a), that the Court order that a patient care ombudsman is not necessary for Affinity. It is the Debtors' understanding that, upon a motion of the Office of the United States Trustee, that one or more patient care ombudsmen will be appointed for one or more of the other Debtors. This Motion relates to Affinity only.

28. Relevant case law establishes nine, non-exclusive factors for the Court to consider when determining whether the appointment of a patient care ombudsman is necessary under the facts of the case. *See In re Valley Health System*, 381 B.R. 756, 761 (Bankr. C.D. Cal. 2008). Such factors include:

1. The cause of the bankruptcy;

2. The presence and role of licensing or supervising entities;

3. Debtor's past history on patient care;

4. The ability of the patients to protect their rights;

5. The level of dependency of the patients on the facility;

6. The likelihood of tension between the interests of the patients and the debtor;

7. The potential injury to the patients if the debtor drastically reduced its level of patient care;

8. The presence and sufficiency of internal safeguards to ensure appropriate level of care; and

9. The impact of the cost of an ombudsman on the likelihood of a successful reorganization.

*Id.* (citing *In re Alternate Family Care*, 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007)).

6

29. The Debtors submit that consideration of the foregoing factors decidedly leads to the conclusion that, under the facts and circumstances, a patient care ombudsman is unnecessary for Affinity. As an initial matter, Affinity is a management company with no patients. Accordingly, the six factors above which expressly relate to patients (*i.e.*, nos. 3 through 8) are simply inapplicable, except to the extent that they emphasize that no ombudsman is needed in the Affinity case because, with no patients, there are no real services for an ombudsman to perform. Further, the cause of Affinity's bankruptcy had nothing to do with patient care or privacy concerns, but rather financial issues. *See In re Valley Health System, supra*, 381 B.R. at 761 (finding appointment of ombudsman unnecessary, in part, because of "no evidence that the bankruptcy was precipitated by allegations of deficient patient care or privacy concerns.") As for the second factor above, the Debtors are already subject to monitoring and inspection by certain state agencies, which further weigh against the need for an ombudsman. *See id.* at 762. ("The District is also subject to monitoring and inspection by several state and county regulatory agencies.") Moreover, and significantly, one or more ombudsman will be appointed in certain of the Debtors' cases, which will address the concerns required by the Bankruptcy Code and rules relating to the appointment of an ombudsman. As for the final factor, the Debtors acknowledge that the cost of an ombudsman for Affinity would have little, if any, impact on the likelihood of a successful reorganization.

30. In light of the foregoing, a patient care ombudsman is unnecessary for Affinity. An analysis of the relevant factors weighs heavily against such an appointment. The ombudsmen that will be appointed for the other Debtors will serve the role of any ombudsman that would otherwise be appointed in the Affinity case.

7

31. The Office of the United States Trustee is aware of the Motion and has no objection to it.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order granting the Motion and granting the Debtors such other and further relief as is just and equitable.

Dated at New Haven, Connecticut this 19th day of January, 2016.

                              Pullman & Comley, LLC
                              Proposed Counsel to the Debtors
                              AFFINITY HEALTHCARE MANAGEMENT, INC., ET AL

By: /s/ Elizabeth J. Austin
    Elizabeth J, Austin (ct04383)
    Jessica Grossarth (ct23975)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT 06601-7006
    (203) 330-2000 Fax: (203) 576-8888
    eaustin@pullcom.com
    jgrossarth@pullcom.com